UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOWER ROCK STONE COMPANY, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:12-CV-00606 CDP |
| QUARRY AND ALLIED WORKERS LOCAL NO. 830, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Tower Rock Stone Company brings this action to vacate an arbitration award in favor of defendants Quarry and Allied Workers Local No. 830 and the Eastern Missouri Laborers District Council. Defendants have counterclaimed for enforcement of the award and have also moved for an award of attorneys' fees and prejudgment interest. The parties have filed cross-motions for summary judgment. I find that the arbitrator acted within the scope of his authority, so I will enforce the award and enter judgment in the defendants' favor, but I will not award them fees or prejudgment interest.

**I.** *Background*

Tower Rock operates a limestone quarry in Ste. Genevieve, Missouri, where it employs members of Local 830. Tower Rock and Local 830 are parties to a

collective bargaining agreement (CBA) effective 2010-2013, which governs the employment relationship between the company and the union. The CBA provides that employees will only be discharged for "just cause," but it does not define that term.

Haul driver Jeff Williams, a member of Local 830, has worked at Tower Rock for more than nine years. While driving a Tower Rock haul truck in September 2011, Williams reached down to grab a milk bottle from the floorboard, lost control, and crashed into a rock wall. The accident caused significant damage to the vehicle. As a result of the accident, Tower Rock found that Williams had engaged in the "Class 4 Offense" of:

> deliberately or recklessly misusing, destroying or damaging Company property or property of any employee.

Tower Rock then discharged Williams. The CBA provides that an employee who commits one of the enumerated Class 4 Offenses "will be subject to discharge immediately."

Local 830 grieved Williams' discharge through the multi-step sequential process set out in the CBA. At "step three" of that process, the CBA provides that if Tower Rock and Local 830 are "unable to resolve the grievance within fifteen (15) working days after meeting together," the grievance would proceed to the District Council and finally to binding arbitration before an impartial arbitrator selected by the parties. Though the parties did not actually conduct a "step three"

meeting, they did in fact choose Ruben Armendariz as arbitrator and submit the grievance to arbitration. Tower Rock and Local 830 agreed that the issue before Armendariz was:

> *Whether [Tower Rock] had just cause to discharge Jeffrey Williams, the grievant herein, and, if not, what is the appropriate remedy?*

Armendariz held a hearing on the grievance and considered briefs from both parties. Ultimately, he decided that Williams had not committed the "deliberate or reckless" Class 4 Offense, but rather the Class 3 Offense of "a serious (Company discretion) careless misuse of Company property." Armendariz accepted Local 830's argument that Tower Rock's "eating policy"[1] had contributed to the haul truck accident, and he found that the company had not made the requisite showing of Williams' intent. Armendariz concluded:

> It is the Opinion of the arbitrator the Company did not meet its burden of proof for they failed to prove grievant's conduct was deliberate and reckless – a *Class 4 Offense.* In order to prove grievant was reckless, there must be a showing of intent and none exists here. This was an unfortunate accident. The company would have been better off classifying this accident as a *Class 3 Offense.* The alleged inconsistencies in grievant's statements are not sufficient to support a finding that his conduct was reckless and a *Class 4 Offense.* Company failed to interview the grievant at the 3rd step of the grievance procedure in the presence of a union representative who could have explained the inconsistencies. Company failed to have [Tower Rock's vice president] testify to support the Company's determination as to why he opted for grievant's discharge. Company's refusal to hold a 3rd step grievance

---

[1] Since approximately 1999, Tower Rock has had in place an "eating policy" whereby drivers work through lunch and eat and drink in their trucks while working.

– 3 –

meeting makes a mockery of the grievance process and is a due process violation as stated above. Company was contributory negligent because it permits employees to eat and drink (eating policy) in their vehicles while working. Moreover, the grievant's long and exemplary work history warrants mitigation of the penalty.

Armendariz sustained the grievance in part and issued an award reinstating Williams with full back pay and benefits, less a 14-day suspension. In his award, he reclassified the haul truck accident as the "careless misuse" Class 3 Offense. The CBA provides that, for Class 3 Offenses, it "will be the practice of [Tower Rock] to give only a disciplinary layoff prior to discharge."

After Armendariz issued his award, Tower Rock reinstated Williams, but it has refused to restore Williams' back pay and benefits as ordered by the arbitrator. Instead, Tower Rock filed this action to set aside the arbitrator's award. Local 830 and the District Council counterclaimed for enforcement of the award, and the parties have now moved for summary judgment on their claims. In addition, the defendants request prejudgment interest, as well as attorneys' fees, arguing Tower Rock brought this action in bad faith.

## II. *Summary Judgment Standard*

The summary judgment standards are well-established, and they do not change when both parties have moved for summary judgment. *See Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). In determining whether to grant either party's motion, the court views the facts – and any

– 4 –

inferences from those facts – in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant bears the burden of establishing that (1) it is entitled to judgment as a matter of law and (2) there are no genuine issues of material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Here, although the parties disagree on how certain facts should be interpreted, there are no material facts in dispute.

Tower Rock contends that the arbitration award should be set aside because (1) it does not "draw its essence" from the parties' CBA, as required by the Labor-Management Relations Act, 29 U.S.C. § 185 *et seq*., and (2) it violates public policy as set forth in a Mine Safety and Health Administration (MSHA) regulation, 30 C.F.R. § 56.9101 ("Operators of self-propelled mobile equipment shall maintain control of the equipment while it is in motion").

### III. *Standard of Review of Arbitration Award*

A court's review of an arbitration award is "extremely limited." *United Food & Comm. Workers v. Shop 'N Save Warehouse Foods, Inc.*, 113 F.3d 893, 894 (8th Cir. 1997). The reviewing court "must accord an extraordinary level of deference to the underlying award." *Boise Cascade Corp. v. Paper Allied-Industrial, Chem. & Energy Workers*, 309 F.3d 1075, 1080 (8th Cir. 2002) (internal quotation marks omitted). For example, the court may not disturb the

arbitrator's "view of the facts." *Alvey, Inc. v. Teamsters Local Union No. 688*, 132 F.3d 1209, 1212 (8th Cir. 1997). Indeed, it may not revisit the merits of an award even if it believes the arbitrator "committed serious error" when interpreting the CBA at issue. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). "An arbitrator's award must be enforced as long as he is arguably construing or applying the collective bargaining agreement rather than dispensing his own brand of industrial justice." *Homestake Mining Co. v. United Steelworkers of America*, 153 F.3d 678, 680 (8th Cir. 1998) (internal quotation marks and brackets omitted). That standard is met as long as the award "draws its essence from" the governing CBA. *Int'l Paper Co. v. United Paperworkers Int'l Union*, 215 F.3d 815, 817 (8th Cir. 2000).

### IV. *The Award Draws Its Essence from the CBA*

"An arbitrator's award draws its essence from the parties' agreement as long as it is derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Williams v. National Football League*, 582 F.3d 863, 883 (8th Cir. 2009) (internal brackets omitted). If an agreement's language is plain or "unmistakably clear," an arbitrator must enforce it as written, but if "the plain language of the parties' agreement is silent or ambiguous with respect to a disputed issue, an arbitrator is obliged to consider other relevant sources of the parties' intent." *Boise Cascade*, 309 F.3d at 1082.

Here, Tower Rock first argues that the arbitration award fails to draw its essence from the CBA because arbitrator Armendariz determined that the "Class 4 Offense" at issue required a showing of intent. Tower Rock had initially found that Williams committed the Class 4 Offense of:

> deliberately or recklessly misusing, destroying or damaging Company property or property of any employee.

Armendariz determined the haul truck accident was not a Class 4 Offense because the company had failed to prove that Williams' conduct:

> was deliberate and reckless – a *Class 4 Offense.* In order to prove grievant was reckless, there must be a showing of intent and none exists here.

Tower Rock essentially argues that Armendariz ignored the plain language of the CBA when he required a showing of intent to prove "recklessness." In support of this argument, Tower Rock points to a 2000 interpretation of the CBA language describing this Class 4 Offense by arbitrator Josef Rohlik[2]. Rohlik concluded that, in that case, a truck driver who reached for a soda and lost control of his truck had committed the "deliberate or reckless misuse" offense. He stated:

> To conclude otherwise would implicitly require to add either an actual injury or the intent to cause damage to a Class 4 Offense of this kind. That element is not required by the negotiated provision in question.

---

[2] Tower Rock also introduced as evidence an award rendered by arbitrator Jerome Diekemper in 2008. While some of the facts in the 2008 case were similar, the employee-grievant was discharged under another provision altogether, and arbitrator Diekemper had no occasion to interpret the language at issue here.

– 7 –

Tower Rock contends that under Eighth Circuit precedent, this interpretation became a binding part of the CBA, and Armendariz was required to follow it. *See Trailways Lines, Inc. v. Trailways, Inc. Joint Council*, 807 F.2d 1416, 1425–26 (8th Cir. 1986). Tower Rock's reading of *Trailways* is incomplete.

In *Trailways*, two grievances about an employer's "no-beards" policy were arbitrated within six months. Though the first arbitrator found in favor of the employer, the second arbitrator dismissed his finding, deciding that it represented a "minority view." In addition, the second arbitrator ignored the "law of the shop," failed to address the issue stipulated by the parties, and did not even mention all of the relevant provisions of the CBA. Indeed, the second arbitrator "cop[ied] a substantial portion of his analysis from a completely different case rather than focusing on the facts of the grievance before him." *Id.* at 1424. The Eighth Circuit expressed "grave concerns" over his treatment of the first arbitration award, but specifically held that it was "not the basis of [the court's] decision" to vacate the award. *Id.* at 1425. Ultimately, the court found that the second arbitrator had not drawn the essence of his award from the CBA because he:

> based his decision on personal notions of what was proper – as evidenced by his copied analysis from a totally dissimilar case and his disregard for relevant provisions of the [CBA].

*Id.* at 1426. In contrast to the second *Trailways* arbitrator, in this case Armendariz acknowledged the relevant "law of the shop" by discussing Tower Rock's past disciplinary enforcement practices. He decided the issue to which the Tower Rock and Local 830 had stipulated, rather than reformulating it, and he carefully interpreted the relevant CBA language. The facts arbitrated by Rohlik in 2000 may have been similar, but they did not involve the same transaction, the same grievant-employee, or even the same union.[3]

In *Trailways*, the Eighth Circuit recognized that "there may be situations where an arbitrator will refuse to defer to a prior award involving the same issue." *Id.* at 1425. One of those situations, it found, could be when the prior decision "was made without the benefit of some important and relevant . . . considerations." *Id.* at 1425 n.16 (quoting F. Elkouri & E. Elkouri, How Arbitration Works 428 (BNA 4th ed. 1985)). This is exactly the conclusion that Armendariz came to: that Rohlik had not had the opportunity to consider the effect of Tower Rock's eating

---

[3] The *Trailways* court acknowledged that res judicata applies in arbitration only if a prior award has "strict factual identities." 807 F.2d at 1425 (citing *United Elec. Radio & Mach. Workers v. Honeywell, Inc.*, 522 F.2d 1221, 1228 (7th Cir. 1975) and *Int'l Chem. Workers Union Local No. 189 v. Purex Corp.*, 427 F. Supp. 338, 339 (D. Neb.), *aff'd per curiam*, 566 F.2d 48 (8th Cir. 1977)). In *Honeywell*, the Seventh Circuit upheld an award where the arbitrator strayed from prior interpretations of "the same contractual language," noting that res judicata is "less suited to the informal process of industrial arbitration than to the litigation process." 522 F.2d at 1228.

policy.[4] Far from supporting Tower Rock's position, the *Trailways* court acknowledged that "an arbitrator generally has the power to determine whether a prior award is to be given preclusive effect," especially when that arbitrator thoroughly explains his or her decision to break from a prior award. *Id.* at 1426 (if an arbitrator "does not accord any precedential effect to a prior award in a case like this," he or she should "at least explain the reasons for refusing to do so"). *Accord Am. Nat. Can Co. v. United Steelworkers of Am.*, 120 F.3d 886, 890–93 (8th Cir. 1997) (discussing in detail what *Trailways* did and did not hold and enforcing arbitration award where arbitrator discussed prior interpretations of the same contractual language before departing from those awards).

Even if Rohlik's interpretation were binding, Armendariz' award did no injustice to it. Armendariz did not require "the intent *to cause damage*," but rather "a showing of intent." Tower Rock may find it "absurd" for Armendariz to distinguish between different types of intent (Doc. No. 24, p. 2), but the fact of the matter is that he did, and it is not the court's role to review whether such an interpretation is correct or not. *E.g., Misco*, 484 U.S. at 38; *Boise Cascade*, 309 F.3d at 1080. Armendariz' conclusion must not be disturbed as long as he was

---

[4] Even if Armendariz had not explained his decision, I could not conclude that Rohlik's award was binding upon him. Even a prior arbitration award with "strict factual identities" stands only "until the parties annul it by a newly worded contract provision." *Trailways*, 807 F.2d at 1425 (quoting Elkouri, at 428). The current CBA took effect in 2010. Prior versions are not part of the record, so I cannot say whether all of the relevant provisions remain identical.

"arguably construing or applying" the CBA when he so concluded. *Misco*, 484 U.S. at 38. I find that he was. The word "reckless" is not so "unmistakably clear" that it can be applied without interpretation. *Boise Cascade*, 309 F.3d at 1082. *See also Alvey*, 132 F.3d at 1211 (the term "possession" in CBA prohibiting possession of narcotics at work was ambiguous, and arbitration decision limiting it to "knowing possession" drew its essence from the agreement). As long as the Armendariz considered other sources of the parties' intent, his interpretation must be upheld, even if it constitutes "serious error." *Misco*, 484 U.S. at 38. It is obvious from Armendariz' opinion that he considered not only the language of the CBA and the prior arbitration decisions upon which Tower Rock relies, but also the company's past inconsistent enforcement of its disciplinary procedures.

Tower Rock also points to *St. Louis Theatrical* as support that Armendariz exceeded his authority under the CBA. *St. Louis Theatrical Co. v. St. Louis Theatrical Bhd. Local 6*, 715 F.2d 405 (1983). This case is inapposite because the arbitrator in that case was not doing a "just cause" analysis as Armendariz was engaged in here. *Id.* at 408–09 (CBA that limits arbitrator's authority to one issue "differs substantially" from CBAs that gave arbitrator authority to do "just cause" analysis). *Accord Boise Cascade*, 309 F.3d at 1085 ("last chance agreement" that superseded CBA limited arbitrator's authority and "render[ed] the just cause provision in the parties' CBA irrelevant").

Further, Tower Rock contends Armendariz based his decision on "equitable" considerations inappropriate to the task he was charged with, including the company's eating policy, its refusal to hold a "step three" meeting, the discipline the company had given to employees who had engaged in similar conduct, and Williams' long work history. The Eighth Circuit has repeatedly upheld awards where arbitrators considered such factors as part of a "just cause" analysis. *See, e.g.*, *Trailmobile Trailer, LLC v. Int'l Union of Electronic, Elec., Salaried, Mach. & Furniture Workers*, 223 F.3d 744, 746 (8th Cir. 2000) (upholding arbitration award that rested on finding that other employees received lesser penalties for same conduct); *Chauffeurs Local Union No. 878 v. Coca-Cola Bottling Co.*, 613 F.2d 716, 719–20 (8th Cir. 1980) (upholding award where arbitrator found no just cause for discharge because employee had not gotten a hearing and commenting that "arbitrators have long been applying notions of 'industrial due process' to 'just cause' discharge cases"); *Int'l Bhd. of Elec. Workers, Local Union No. 53 v. Sho-Me Power Corp.*, 715 F.2d 1322, 1326–27 (8th Cir. 1983) (reversing district court and reinstating award where arbitrator lessened penalty in light of employer's improper motivation for discharge); *Midwest Coca-Cola Bottling Co. v. Allied Sales Drivers Union, Local 792*, 89 F.3d 514, 518 (8th Cir. 1996) (reversing district court and reinstating award where

arbitrator lessened penalty in light of employee's 17-year work history).[5] It is also worth noting that Tower Rock agreed at the outset that Armendariz had the authority to conduct a "just cause" analysis, and it "cannot now argue that the arbitrator had no authority to decide an issue it agreed to submit." *Local 238 Int'l Bhd. of Teamsters v. Cargill, Inc.*, 66 F.3d 988, 991 (8th Cir. 1995).

Finally, Tower Rock argues that Armendariz exceeded his authority by equating "deliberate" and "reckless" when he stated "It is the Opinion of the arbitrator the Company did not meet its burden of proof for they failed to prove grievant's conduct was deliberate *and* reckless." (emphasis added). I agree with Local 830 that the sentence that immediately follows – "In order to prove grievant was reckless, there must be a showing of intent and none exists here" – clears up the latent ambiguity in this statement. Even if it did not, this would not provide grounds to vacate the award. *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598 (1960) ("A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award.").

---

[5] Indeed, in the 2008 arbitration award Tower Rock introduced, arbitrator Diekemper states: "Length of service is one factor commonly considered in the employee's favor by arbitrators, especially if coupled with a good record. . . . Had the Grievant been a 14-year employee with a similarly good record, rather than a 14-month employee, the decision in this case [to uphold discharge] would have been much more difficult." *In the Manner of Arb. Between Tower Rock Stone Co. & Quarry, Maint. & Allied Trades Local Union 830*, Def.'s Ex. 5, p. 19 [Doc. No. 18-5].

For the foregoing reasons, I must conclude that the arbitration award drew its essence from the governing CBA.

## V.  *Public Policy*

Tower Rock also argues that the award should be vacated because it violates public policy. In *W.R. Grace*, the United States Supreme Court recognized that an arbitration award may be set aside on public policy grounds if it violates "some explicit public policy that is well defined and dominant." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber Workers*, 461 U.S. 757, 766 (1983). But *W.R. Grace* does not "sanction a broad judicial power to set aside arbitration awards as against public policy." *Misco*, 484 U.S. at 43. To the contrary, "the public policy exception is narrow." *E. Assoc. Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 63 (2000). To be vacated for violating public policy, an arbitration award "must conflict with specific laws or legal precedents, not general policy considerations, and the violation of such a policy must be clearly shown." *Alvey*, 132 F.3d at 1212 (internal quotation marks omitted). Significantly, the inquiry for the court is not whether the infraction at issue violated public policy, but whether reinstatement of the grievant does. *E. Assoc. Coal Corp.*, 531 U.S. at 62–63.

Tower Rock contends that Williams' accident was "conduct that clearly violates the regulation issued by the U.S. Department of Labor," MSHA:

> Operators of self-propelled mobile equipment shall maintain control of the equipment while it is in motion. Operating speeds shall be consistent with conditions of roadways, tracks, grades, clearance, visibility, and traffic, and the type of equipment used.

30 C.F.R. § 56.9101. This regulation, on its own, is not sufficient evidence of a "dominant" public policy. *Compare Union Pac. R. Co. v. United Transp. Union*, 3 F.3d 255, 261–62 (8th Cir. 1993) ("comprehensive set of detailed regulations," including a "comprehensive scheme of testing" and "specific actions that a railroad must take," established dominant public policy against reinstating railroad employee who used drugs while on duty). *Accord Iowa Elec. Light & Power Co. v. Local Union 204 of Int'l Bhd. of Elec. Workers*, 834 F.2d 1424, 1427–28 (8th Cir. 1987) ("strict regulatory scheme" passed by Congress, "volumes of safety rules," and specific directives by the Supreme Court established dominant public policy concerning secondary containment at nuclear plant). Further, the MSHA regulation covers many situations for which discharge is not permitted under the governing CBA, and it does not even suggest an enforcement mechanism, demonstrating that it is not "well defined." To hold that the award should be vacated for violating this regulation would eviscerate Armendariz' interpretation of the CBA: namely, that "reckless," as it is used to define the Class 4 Offense, requires a showing of intent. *See, e.g., United Steelworkers*, 363 U.S. at 599 ("It is the arbitrator's construction which was bargained for.").

Even if the regulation itself were a "well defined and dominant" policy, the proper inquiry is not whether Williams' conduct violates public policy. Rather, it is whether his reinstatement, back pay, or back benefits violates public policy. *E. Assoc. Coal Corp.*, 531 U.S. at 62–63. Tower Rock has not made a clear showing that Williams' reinstatement violates the MSHA regulation because it has not demonstrated Williams is likely to violate this regulation in the future. *See Misco*, 484 U.S. at 47 (Blackmun, J., concurring) (reinstatement of machinist whose car contained marijuana did not violate public policy because the company did not show "that he will report to work in an impaired state in the future"). *See also Homestake Mining Co. v. United Steelworkers of Am.*, 153 F.3d 678, 681 (8th Cir. 1998) (reinstatement of welder who violated company rule did not contravene public policies related to mine safety because welder did not act "grossly and deliberately"); *Alvey*, 132 F.3d at 1212 (where arbitrator found employee had not "knowingly" possessed drugs at work in violation of CBA, that employee's reinstatement "did no clear violence" to public policy against workplace drug use).

Tower Rock attempts to analogize this case to *Union Pacific Railroad Co. v. United Transportation Union*, in which the Eighth Circuit vacated an arbitration board's award reinstating a railroad employee after he was terminated for using drugs and alcohol on the job. 3 F.3d 255 (8th Cir. 1993). The *Union Pacific* court found that the board's decision violated the "well-defined and dominant" public

– 16 –

policy against a railroad employing a person "whose impaired judgment due to the use of drugs and alcohol could seriously threaten public safety." *Id.* at 261. The court noted that the arbitration board had never determined whether the employee had, in fact, been using controlled substances while at work, but instead, had based the reinstatement on a due process violation. If the board had determined the employee had not been using drugs and alcohol, the court stressed that it "would be bound to enforce the award." *Id.* at 262. Here, unlike the *Union Pacific* arbitration board, Armendariz did determine Williams had not committed the offense at issue: namely, reckless damage to company property. Therefore, Tower Rock has not made the requisite showing that his reinstatement would contravene even the MSHA regulation, much less a well-defined and dominant public policy.

Because Tower Rock has not made a clear showing that Williams' reinstatement, back pay, and back benefits violate a "well defined and dominant" public policy, I cannot vacate the arbitration award on public policy grounds.

## VI. *Attorneys' Fees*

The defendants have moved for attorneys' fees, contending that Tower Rock's arguments supporting vacation of the arbitration award are "completely devoid of merit and made in bad faith." (Defs.' Mem. in Support of Mot. for Summ. J., Doc. No. 14, p. 19.) Although the LMRA does not explicitly permit an

award of attorneys' fees, such an award may be "justified by circumstances in which the losing party has acted in bad faith." *Lackawanna Leather Co. v. United Tool & Comm. Workers Int'l Union*, 706 F.2d 228, 232 (8th Cir. 1983). The Eighth Circuit has held that an "unjustified refusal to abide by an arbitrator's award may constitute bad faith for the purpose of awarding attorneys' fees." *Int'l Union, United Auto. Workers v. United Farm Tools, Inc., Speedy Mfg. Div.*, 762 F.2d 76, 77 (8th Cir. 1985).

I cannot conclude that Tower Rock filed this action in bad faith. Its claims were not ultimately successful, but they were not "devoid of merit." In light of the two prior arbitration awards in Tower Rock's favor involving similar facts, and the specific MSHA regulation that it believed applied, I cannot find that the action was "frivolous, unreasonable or groundless." *Actors' Equity Assoc. v. Am. Dinner Theatre Inst.*, 802 F.2d 1038, 1042 (8th Cir. 1986). This was a good faith disagreement, and an award of attorneys' fees is not warranted.

## VII. *Prejudgment Interest*

Defendants request prejudgment interest on the back pay owed to Williams, but arbitrator Armendariz did not set out the precise amount of back pay and benefits he awarded, and I cannot determine those amounts on this record. The amount of back pay and benefits – as well as whether Williams is entitled to

interest and, if so, at what rate – are issues in the first instance for the arbitrator. For this reason, I decline to award prejudgment interest.

For the foregoing reasons,

**IT IS HEREBY ORDERED that** defendants' motion for summary judgment [#13] is **GRANTED**.

**IT IS FURTHER ORDERED** that:

Defendants' motion to strike [#23] is **DENIED** as moot.

Plaintiff's motion for summary judgment [#16] is **DENIED**.

Plaintiff's requests for attorneys' fees and prejudgment interest are **DENIED**.

**IT IS FINALLY ORDERED** that defendants' motion for ruling [#26] is **DENIED** as moot.

A separate judgment in accordance with this ruling is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 14th day of January, 2013.